**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
UNITED STATES OF AMERICA,
                                        Government.          **DECISION & ORDER**

            -against-                                        S1  21  Cr.  516  (RMB)

WILFREDO ROSADO,
                                        Defendant.
------------------------------------------------------------X

     This Decision and Order denies the Defendant Wilfredo Rosado's Rule 33 Motion, dated June 5, 2024, for the reasons that follow.[1]

## I. Background

     On October 4, 2023, a SDNY jury found the Defendant Wilfredo Rosado guilty of two counts, namely sexual exploitation of a child (production of child pornography) in violation of 18 U.S.C. § 2251(a); and distribution of child pornography in violation of 18 U.S.C. § 2252A. The jury also found the Defendant not guilty of enticement of a minor under 18 U.S.C. § 2422(b) and of kidnapping of a minor under 18 U.S.C. § 1201.[2]

     The Government's case took five days to present to the jury and consisted of nine witnesses, including Defendant's victim, Kaili, and Dr. Chitra Raghavan, an expert witness knowledgeable about domestic violence and coercive control.[3] *See* Trial Tr., dated Oct. 2, 2023, at 555.

---

[1] Any issues raised and not specifically discussed have been reviewed and rejected by the Court.

[2] Rosado's sentencing is scheduled for November 19, 2024.

[3] *See* Gov't Disclosure for Expert Witness Dr. Chitra Raghavan, dated Aug. 4, 2023, at 5 ("In sum, Dr. Raghavan is a licensed clinical psychologist and a tenured professor of forensic

The defense case included the testimony of two witnesses, Cecily Rodriguez, who is Defendant's cousin, and Chad Vasquez, a defense investigator.

**<u>Production of Two Sex Videos</u>**

In or about June 2021, the Defendant (who at the time was approximately 35 years old) made explicit sex videos of Kaili, who was 17 at the time. One video showed Defendant having sexual intercourse with Kaili; the other video depicted oral sex between Defendant and Kaili. The Defendant recorded the videos while in a hotel in Pennsylvania. *See* Trial Tr., dated Sept. 27, 2023, at 224:22-24 (AUSA: "Kaili, how old were you when Angel asked to take a video of the two of you having sex?" Kaili: "I was 17."); Government Exhibit ("GX") 224; 224-10A; 224-11A.[4] Kaili testified that a screenshot entered into evidence was "from me and Angel having sex." Trial Tr., dated Sept. 27, 2023, at 259:1, 250:12-20; *see also* GX 224-11. Kaili also testified that the second video was of "me and Angel giving each other oral sex." Trial Tr., dated Sept. 27, 2023, at 260:7.

---

psychology at John Jay College, whose research, publications, and teaching have focused on trauma and coercive control in the context of domestic violence. Dr. Raghavan is the Director of the Forensic Mental Health Counseling Master's Program at John Jay College, which trains therapists. Dr. Raghavan also designed a program for master's degree students specializing in victim services. In addition to her work with John Jay College, Dr. Raghavan leads training groups who deal with domestic violence and/or coercive control, including mental health counselors, such as social workers, and also lawyers and judges working in domestic violence.").

**Dr. Raghavan did not render a formal opinion (diagnosis) of the relationship between the Defendant and Kaili. Among other things, she did not "have any personal knowledge of the facts of this case." Trial Tr., dated Oct. 2, 2023, at 555:21-22. Nor had she met much less interviewed any of the parties. *Id.* at 555:10, 555:19. And, she had not read "any documents related to the allegations in this case." *Id.* at 555:13-14.**

[4] Kaili became pregnant and gave birth to Defendant's child on July 27, 2021. *See* GX 1203.

The two sex videos were produced and directed by the Defendant and were shown to the jury. *See* GX 224-10; GX 224-11.Defendant Rosado was clearly intentional and purposeful in making the videos. *See* Gov't Opp. at 2, 15; GX 224-10; GX 224-11; Trial Tr., dated Sept. 27, 2023, at 224:21, 216:5-9. Rosado specifically asked Kaili in advance to make sexploitation videos. *See* Trial Tr., dated Sept. 27, 2023, at 224:21. Rosado directed the sex video performances, including by shaking and slapping Kaili's buttocks so she was more visible to the camera. *See* Gov't Opp., dated June 27, 2024, at 15; GX 224-10. Rosado adjusted and improved the lighting while the videos were being recorded. *See* Gov't Opp. at 2; GX 224-10. Rosado instructed Kaili to take her clothes off and he told Kaili that the camera needed to "see" her. GX 224-11; *see* Gov't Opp. at 2. One video "depicts Rosado repositioning Kaili's body to center it on the camera and then opening her legs so that Kaili's vagina was clearly visible to the camera." Gov't Opp. at 15; *see United States v. Sirois*, 87 F.3d 34, 39 (2d Cir. 1996) (conviction under § 2251(a) did not require government to prove that illegal sexual activity was the sole or dominant purpose of the minor's being transported so long as the evidence showed it to be one of the dominant motives).[5] The videos were sent by Defendant from

---

[5] *See also United States v. Deschambault*, 2023 WL 4975969, *4 (D. Me. Aug. 3, 2023) ("the videos entered into evidence show [defendant] instructing and directing the victim in sexual acts as he guides her both physically and verbally and records her following his commands . . . "); *United States v. Raplinger*, 555 F.3d 687, 693 (8th Cir. 2009) (evidence sufficient to permit a rational jury to find beyond a reasonable doubt that one of defendant's dominant purposes was to produce sexually explicit images, notwithstanding that defendant and his victim were in a months-long sexual relationship with one another); *United States v. Morales-De Jesus*, 372 F.3d 6, 21 (1st Cir. 2004) (evidence included the defendant's "specific instructions regarding certain positions [that the defendant] wanted [the minor] to assume relative to the camera").

Pennsylvania to the Bronx approximately two months after filming.  *See* Trial Tr., dated Sept. 27, 2023, at 256:4-261:14.

After considering the arguments of counsel and all of the evidence presented at trial - - as well as the jury instructions given by the Court - - the jury voted to convict Rosado on the two counts set forth on page one above.   The jury rejected, among other things, a principal defense theory that the Defendant and Kaili were in a relationship and "consensually" recorded their sexually explicit acts.   In other words,  the jury found beyond a reasonable doubt that, in accordance with the text of 18 U.S.C. § 2251(a), the Defendant used, employed, persuaded, induced, enticed, or coerced Kaili (a minor) less than 18 years old to take part in sexually explicit conduct with the intent to produce visual depictions in video form.  *See United States v. Broxmeyer*, 616 F.3d 120, 124 (2d Cir. 2010) ("To secure a conviction under § 2251(a), the government must prove beyond a reasonable doubt that: 1) the victim was less than 18 years old; 2) the defendant used, employed, persuaded, induced, enticed, or coerced the minor to take part in sexually explicit conduct for the purpose of producing a visual depiction of that conduct; and 3) the visual depiction was produced using materials that had been transported in interstate or foreign commerce.").

### Rule 29 Motion

On December 21, 2023, Defendant's prior counsel, Florian Miedel, made a motion "pursuant to Rule 29 . . . [to] vacate Mr. Rosado's conviction of count two of the indictment, exploitation of a child in violation of 18 U.S.C. § 2251(a)."   Rule 29 Motion at 1.[6]   The Rule 29

---

[6] Defendant has had at least four (separate) attorneys in this case, including Federal Defenders, CJA trial counsel Patrick Joyce, CJA counsel Florian Miedel, and current CJA counsel Sarah Sacks.

The Federal Defenders Office was appointed as defense counsel on August 3, 2021 when Rosado made his first court appearance.   Federal Defenders filed numerous motions and

Motion conceded that: "There was no dispute at trial that Kaili was under 18 years old, and that the recording and/or the cell phone on which the videos were recorded travelled in interstate commerce." *Id*. at 3. Mr. Miedel challenged whether "Mr. Rosado 'employed, used, persuaded, induced, enticed, or coerced' Kaili to participate in the recording." *Id*. According to Mr. Miedel, "simply asking Kaili to participate, without taking the further step of seeking to convince her through persuasive tactics or enticement or coercion, Mr. Rosado's conduct did not fall within the purview of [18 U.S.C. § 2251(a)]." *Id*. at 5.

The Government strongly opposed the Rule 29 Motion on January 12, 2024. "Rosado's argument is meritless. The evidence at trial was more than sufficient to establish that Rosado

---

applications. But by letter, dated March 16, 2022, Federal Defenders requested to be relieved due to an "irreconcilable conflict between Mr. Rosado and Federal Defenders."

By Order, dated March 22, 2022, the Court appointed CJA trial counsel, Patrick Joyce to succeed Federal Defenders. Mr. Joyce filed multiple motions and applications on Rosado's behalf. Mr. Joyce filed motions in limine and also submitted to the Court together with the Government the proposed jury charges which **included jury charges Defendant now contends are erroneous**. Mr. Joyce represented the Defendant throughout the trial with the assistance of an associate CJA counsel (who was authorized by the Court).

After the Defendant was found guilty, Mr. Joyce informed the Court that the Defendant wanted a new attorney. Mr. Rosado stated: "I have been uncomfortable with the presentation with Mr. Joyce and Sara [Chekroun, associate CJA counsel]. I asked Mr. Joyce numerous times to have Sara removed because she was making me feel uncomfortable; her demeanor, her tone with me, her body language. I said this numerous times, he refused to say it on the record, so I'm saying it now. . . . I would like to proceed with a new attorney, your Honor." Trial Tr., dated Oct. 4, 2023, at 915:16-916:9.

On October 5, 2023, the Court appointed Florian Miedel in place of Mr. Joyce. On December 21, 2023, Mr. Miedel filed the Fed. R. Crim. P. 29 motion discussed above. And, on or about April 19, 2024, Mr. Miedel filed objections to the Presentence Investigation Report. Nevertheless, by letter dated April 29, 2023, Mr. Miedel advised the Court that the "attorney-client relationship has broken down. [Mr. Rosado] has made clear to me that he does not trust my judgment or advice, and he wishes to have the Court appoint new counsel prior to sentencing."

On May 15, 2024, the Court appointed current CJA counsel, **Sarah Sacks**.

'used,' 'persuaded,' 'induced,' and 'enticed' Kaili to engage in sexual intercourse and oral sex with him for the purpose of producing a visual depiction of that conduct. In particular, the evidence at trial established that Rosado 'used' Kaili because he made her the subject of the sex videos he created. The evidence at trial also established that he 'persuaded,' 'enticed,' and 'induced' Kaili because he groomed and manipulated her into participating in the sex videos by sexually, physically, and psychologically abusing her for more than a year before he recorded the videos. At bottom, Rosado's argument for a judgment of acquittal on Count Two amounts to a claim that he cannot be guilty because Kaili agreed to make the sex videos with him. That is wrong as a matter of law. Consent is not a defense to the crime of production of child pornography.  Whether a minor is 7 or 17 years' old, she cannot agree to be sexually exploited."  Gov't Opp. Rule 29 Motion, dated Jan. 12, 2024, at 1-2.

### The Court's Decision Denying the Rule 29 Motion

The Court denied the Rule 29 Motion as follows:  "The Government clearly and persuasively - - and beyond a reasonable doubt - - proved at trial that the relationship between the Defendant and Kaili was one in which the Defendant controlled Kaili and her actions through the use of physical and psychological means."  Rule 29 Decision and Order, dated Mar. 6, 2024, at 4.[7] "During their relationship, the Defendant was overwhelmingly aggressive and physically violent with Kaili and he threatened to harm Kaili and/or her family members

---

[7] The Court incorporates by reference the entirety of the March 6, 2024 Decision and Order denying Defendant's Rule 29 Motion.

on numerous occasions." *Id*. at 5.  "Recorded audio messages that the Defendant sent to Kaili

threatening to harm her were introduced into evidence." *Id*. at 6.

The Court reviewed the expert testimony of Dr. Chitra Raghavan who had testified that:

"With regard to victims of domestic violence and coercive control . . . 'the reality is that most

women  don't say no to sex because they feel obligated to have sex, especially if they are afraid

of the abuser, but even when they are not. [O]ne possibility is you said no, it didn't work out,

so you don't say no again.  Another possibility is you sense, you are afraid of the abuser so

you  dare  not  say  no.'"  *Id.* at 8 (quoting Trial Tr., dated Oct. 2, 2023, at 605:7-12).  Dr.

Raghavan also testified that the "'biggest effect of successful coercive control on a victim is

she  stays . . . Because  the  intent  of  coercive  control  is  for  the  woman  to  be  obedient  and

ultimately stay in the way that he wants her to stay.  So the biggest success is she stays even

though it harms her, even though it harms her integrity and the outside world can see that, but

she stays.'"  *Id*. at 8-9 (quoting Trial Tr., dated Oct. 2, 2023, at 587:7-12).

**Defendant's June 5, 2024 Rule 33 Motion**

After CJA defense counsel Florian Miedel was replaced on May 15, 2024,  Ms. Sacks

filed the instant Rule 33 Motion. She contends that "'the interest of justice so requires' to re-

argue  and  reconsider  the  motion  to  vacate,  and  request  leave  to  supplement  defendant's

[Miedel's Rule 29] motion." Rule 33 Motion at 1.  Ms. Sacks contends that the "jury charge

here never used the term 'specific intent,' and . . .  it never defined the words 'producing' or

'purpose of producing' . . . ." *Id.* at 2.[8]  Defense counsel relies heavily upon the Fourth Circuit

---

[8] Defense Counsel also contends (unpersuasively) that: "The related issue is one of the
legal sufficiency of the proof, i.e., whether the element of 'the intent and purpose of producing'

case entitled *United States v. Palomino-Coronado*, 805 F.3d 127 (4th Cir. 2015). *See id.* at 2–3, 5. The Court notes there is an extensive discussion of *Palomino-Coronado* infra at pages 19 to 23 which concludes that *Palomino-Coronado* is readily distinguishable and does not support the defense contentions.

The Government (effectively) opposes the Rule 33 Motion and argues persuasively the following: 1) the Defense Rule 33 Motion is untimely i.e., it is approximately six to eight months too late.   "[W]hether filed pursuant to Rule 29 or Rule 33, Defendant's motion is patently untimely . . . . [B]oth Rule 29 and Rule 33 require that such motions be filed within fourteen days of a verdict, i.e., on or about October 19, 2023;"  Gov't Opp. at 6 ; 2) the Defendant waived or forfeited the claims that the jury charges were erroneous because the defense jointly submitted to the Court the very same jury charges which, without objection, were read to and given to the jury for its deliberations.  The defense, in fact, joined in drafting the jury instructions and submitted them to the Court.  They were read to the jury and no objection to the jury charges was lodged at trial or before the jury deliberated.   *Fogarty v. Near N. Ins. Brokerage, Inc*., 162 F.3d 74, 79 (2d Cir. 1998) ("A party who fails to object to a jury instruction at trial waives the right to make that instruction the basis for an appeal."); and

---

can, consistent with this statute and its statutory intent, be synonymous with merely 'making' a cellphone video which was not, strictly speaking, 'child pornography' when made and whether there is sufficient evidence in this case of 'production' or of the 'intent' and 'purpose of producing' such video using only his cell phone, openly and consensually, on a single occasion during otherwise ongoing private consensual activity and the only person or persons ever to see the 'production' were the original participants, via an incidental 'romantic' transmission that took place between them weeks after it was made."  Rule 33 Motion at 2-3.

3) the "evidence at trial was more than sufficient to establish that Rosado engaged in sexually explicit conduct with Kaili for the purpose of producing visual depictions of that conduct. . . the [evidence] show[s], unequivocally, that Rosado specifically intended to make a video of his sexual acts with Kaili when he was engaging in sexual intercourse and oral sex with her in the hotel room in Pennsylvania."  Gov't Opp. at 14.  Among other things, both videos "show [Defendant] Rosado controlling the camera throughout the sexual encounters with Kaili, including by turning the camera on before he engaged in sex acts with Kaili, turning the camera off after he has finished engaging in sex acts with Kaili, and positioning the camera to clearly capture his sex acts with Kaili." *Id.* at 14.

In Reply, dated June 30, 2024, defense counsel reiterates her claim that a "specific intent" instruction was required.  Reply, dated June 30, 2024, at 1.

## II. Legal Standard

"Any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty."  Fed. R. Crim. P. 33(b)(2).

"A party who objects to any portion of the [jury] instructions or to a failure to give a requested instruction must inform the court of the specific objection and the grounds for the objection before the jury retires to deliberate. . . Failure to object in accordance with this rule precludes appellate review, except as permitted under Rule 52(b)."  Fed. R. Crim. P. 20(d).

"The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice."  *United States v. Sanchez*, 969 F.2d 1409, 1414 (2d Cir. 1992).  The Court "must exercise the Rule 33 authority sparingly and [only] in the most extraordinary

circumstances." *United States v. Ferguson*, 246 F.3d 129, 135 (2d Cir. 2001). "There must be a real concern that an innocent person may have been convicted." *United States v. Canova*, 412 F.3d 331, 349 (2d Cir. 2005) (internal quotation marks omitted). "The defendant bears the burden of proving that he is entitled to a new trial under Rule 33." *United States v. McCourty*, 562 F.3d 458, 475 (2d Cir. 2009).

"**Consent of a minor is not a defense**" to the production charge 18 § 2251(a). *United States v. Porterfield*, 2022 WL 17091256, at *5 (W.D.N.Y. Nov. 21, 2022) (emphasis added).

In order to secure a conviction under § 2251(a), the government must prove beyond a reasonable doubt that: 1) the victim was less than 18 years old; 2) the defendant used, employed, persuaded, induced, enticed, or coerced the minor to take part in sexually explicit conduct for the purpose of producing a visual depiction of that conduct; and 3) the visual depiction was produced using materials that had been transported in interstate or foreign commerce. *See United States v. Broxmeyer*, 616 F.3d 120, 124 (2d Cir. 2010).

"The second element that the government must prove beyond a reasonable doubt is that the defendant used or employed or persuaded or induced or enticed or coerced the victim to take part in sexually explicit conduct for the purpose of producing or transmitting a visual depiction of that conduct." Sand, Modern Federal Jury Instructions, Instr. 62-5. "[T]he meaning of 'use' in § 2251(a) is within the typical juror's everyday understanding of the word." *United States v. Sirois*, 87 F.3d 34, 41 (2d Cir. 1996). And, "[t]he terms 'persuade,' 'induce,' and 'entice' are not defined in § 2251(a), but they are 'words of common usage that have plain and ordinary meanings.'" *United States v. Broxmeyer*, 616 F.3d 120, 124 (2d Cir. 2010). "A 'visual depiction' includes any photograph, film, video, or picture, including

10

undeveloped film and videotape, and data stored on computer disk or by electronic means that is capable of conversion into a visual image." Sand, Modern Federal Jury Instructions, Instr. 62-5. "The meaning of ['the purpose'] lies within the common understanding of jurors and needs no further elaboration." *United States v. Meshack*, 225 F.3d 556, 571 (5th Cir. 2000).

The interstate or foreign commerce requirement "may be satisfied either by creating the images using materials transported in or affecting interstate commerce or by knowing (or having reason to know) that the images will be transported or transmitted in interstate commerce." *United States v. Mendez*, 35 F.4th 1219, 1221 (9th Cir. 2022).

## III. Analysis

### Untimely Motion

The Defendant's Rule 33 Motion was filed too late. *See* Fed. R. Crim. P. 33(b)(2) ("Any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty."). The motion in question was filed at least 6 to 8 months after the guilty verdict on October 4, 2023 and the filing extension granted by the Court.[9] There was no excusable neglect set forth by the defense for the delay. Simply stated, the Rule 33 Motion was required to be filed within 14 days of the verdict which was rendered on October 4, 2023. *See id.* Consequently, the Rule 33 Motion is dismissed. *See United States v. Brennerman*, 816 Fed. App'x 583, 587 (2d Cir. 2020); *see also*

---

[9] By memo endorsement dated November 20, 2023, the Court granted prior defense counsel Florian Miedel's request to extend the filing date of post-trial motions pursuant to Rule 29 and/or Rule 33 to December 21, 2023.

*United States v. Jean,* 2020 WL 5211053, at *2 (E.D.N.Y. Sept. 1. 2020); *United States v. Sabir*, 2007 WL 3025701, at *2 (S.D.N.Y. Oct. 15, 2007).[10]

### The Jury Instructions Mirrored the Parties Joint Submission: Any Objection(s) to the Instructions Were Waived or Forfeited

The jury instructions - - including the Count Two instructions - - were jointly submitted by the defense and the Government to the Court. And, the jury instructions submitted to and relied upon by the jury were fully consistent with Sand's Modern Federal Jury Instructions. *See* Joint Proposed Requests to Charge, dated Aug. 16, 2023, at 15, 17, 19, 20, 21; *see also* Sand, Modern Federal Jury Instructions, Instr. 62-5, 62-7. There was never any defense objection to the jury charges (at any time) before the case was presented to the jury and a verdict was reached. Indeed, there was no challenge to the instruction(s) until approximately 8 months after the guilty verdict. *See* Fed. R. Crim. P. 20(d) ("A party who objects to any portion of the instructions or to a failure to give a requested instruction must inform the court of the specific objection and the grounds for the objection before the jury retires to deliberate. . . Failure to object in accordance with this rule precludes appellate review, except as permitted under Rule 52(b)").

Defendant has waived the right to argue at this late date that the jury charges were erroneous (which they were not). *Fogarty v. Near N. Ins. Brokerage, Inc.*, 162 F.3d 74, 79 (2d

---

[10] Fed. R. Crim. P. 45(b)(1) provides: "When an act must or may be done within a specified period, the court on its own may extend the time, or for good cause may do so on a party's motion made: (A) before the originally prescribed or previously extended time expires; or (B) after the time expires if the party failed to act because of excusable neglect." Neither criteria (A) nor (B) have been met in this case.

Cir. 1998) ("A party who fails to object to a jury instruction at trial waives the right to make that instruction the basis for an appeal.").

### The Rule 33 Motion Has No Merit

Even if the defense motion had been timely (which it was not) and even if the jury instructions had been challenged by the defense before the instructions went to the jury (which did not happen), the Rule 33 Motion unequivocally would be denied. *See* Gov't Opp. at 9. The reason is that the Defendant's unlawful intent (and conduct) were obvious and manifest and were determined by the jury to be criminal beyond a reasonable doubt. *See* Court Exhibit F, Verdict Sheet, dated Oct. 4, 2023.   Defendant's unlawful intent was clearly shown in many ways by, among other things, his requesting, coercing, conducting, arranging, directing, using, and engaging in sexually explicit conduct with Kaili for the purpose of producing visual depictions, *i.e.*, the two sex videos of explicit sexual conduct.   "[A] jury may find a violation of § 2251(a) so long as the evidence shows that illegal sexual activity for the production of visual depictions of that activity was one of the dominant motives for the interstate transportation of the minors, and not merely incident of the transportation." *Sirois*, 87 F. 3d at 39, collecting cases; *see also New York v. Ferber*, 458 U.S. 747, 757 (1982) ("[W]e have sustained legislation aimed at protecting the physical and emotional well-being of youth even when the laws have operated in the sensitive area of constitutionally protected rights."); *United States v. Heinrich*, 2021 WL 630962, at *3 (W.D. Pa. Feb. 18, 2021) ("[T]he government was required to prove that production of a visual depiction was a purpose of engaging in the sexually explicit conduct."); *United States v. Sibley*, 681 Fed. App'x 457, 461 (6th Cir. 2017) (a minor's consent is irrelevant to the question whether the defendant used her for the purposes

of 18 U.S.C. § 2251(a)); *United States v. Bach*, 400 F.3d 622, 628-629 (8th Cir. 2005) (upholding a conviction under § 2251(a) where minor had reached the local age of consent. In *Bach*, the minor was sixteen years old and the age of consent under Minnesota law was sixteen); *United States v. Fletcher*, 634 F. 3d 396, 403 (7th Cir. 2011) ("Congress may legitimately conclude that even a willing or deceitful minor is entitled to governmental protection from self-destructive decisions that would expose him or her to the harms of child pornography" (internal citation and quotations omitted.); *United States v. Fifer*, 188 F. Supp. 3d 810, 820 (C.D. Ill. 2016) (distinguishing *Palomino-Coronado* and finding that the Government proved intent because, among other things, the defendant in *Fifer* was "seen changing the angle and position of the recording device." The *Fifer* court found that that activity was "probative of the [d]efendant's intent."); *see also United States v. Kokayi*, 2021 WL 3733010, at *13 (4th Cir. Aug. 24, 2021); *United States v. Torres*, 894 F.3d 305, 313 (D.D.C. 2018); and *United States v. Jackson*, 2024 WL 2874364, at *5 (3d Cir. June 7, 2024).

The jury reached its guilty verdict in the instant case after having been instructed properly on the law. See Instructions read to the jury at n. 11 pages 15 to 16 below; *see also United States v. Sirois*, 87 F.3d 34, 41 (2d Cir. 1996) ("[T]he meaning of "use" in § 2251(a) is within the typical juror's everyday understanding of the word."); *United States v. Smith*, 459 F.3d 1276, 1298 (11th Cir. 2006) ("We do not believe that 'producing' is so unduly technical or ambiguous as plainly to require a specific instruction."); *United States v. Meshack*, 225 F.3d 556, 571 (5th Cir. 2000) ("The meaning of ['the purpose'] lies within the common understanding of jurors and needs no further elaboration.").

Defense counsel argues incorrectly that the jury instructions relating to Count Two fail because they do not define the term "specific intent." According to the defense, the Court would also have been required to define the words "producing" and/or "purpose of producing." Rule 33 Motion at 2. In his summation, Defense counsel Mr. Joyce stated: "Listen closely to the language of the statute. Exploitation, it says that [the Defendant] had to have **used** her. The judge will tell you and the government has already said, consent is not a defense, but think about the word exploitation and think about what the parties are intending at this particular time because when the intent is that we individuals will take videos of ourselves and keep it among ourselves, I would suggest to you that the exploitation statute does not apply." Trial Tr., dated Oct. 3, 2023, at 828:8-15 (emphasis added).

The Government counters persuasively that "Rosado's argument that the jury instructions were erroneous because they did not include the term 'specific intent' or define the terms 'producing' or "purpose of producing' is meritless. Judge Sand's model instructions do not include the words 'specific intent' or define the terms 'producing' or 'purpose of producing'. **Nor is the government aware of any case law in this or any other Circuit that requires a court to do so."** Gov't Opp. at 13 (emphasis added). That is so because no such language is required. *See* Sand, Modern Federal Jury Instructions, Instr. 62-5, 62-7; *see also United States v. Sirois*, 87 F.3d 34, 41 (2d Cir. 1996) ("[T]he meaning of "use" in § 2251(a) is within the typical juror's everyday understanding of the word.").[11]

---

[11] The Court properly instructed the jury as proposed by the Defense and the Government (and Sand) as follows:

"The second element that the government must prove beyond a reasonable doubt is that the defendant employed, used, persuaded, induced, enticed, or coerced the victim to take part in sexually explicit conduct for the

15

The Government was required to prove that "the defendant used, employed, persuaded, induced, enticed, or coerced the minor to take part in sexually explicit conduct for the purpose of producing a visual depiction of that conduct." *United States v. Broxmeyer*, 616 F.3d 120,

---

purpose of producing a visual depiction of that conduct or for the purpose of transmitting a live depiction of that conduct.

The government only needs to prove beyond a reasonable doubt that the defendant engaged in one of the activities I just described for one of the purposes I have just described.

**The terms 'employ', 'persuade', 'use,' 'induce,' 'entice,' and 'coerce' have their common and ordinary meanings.**

The term 'sexually explicit conduct' means any one of the following categories of conduct, whether actual or simulated, and they are as follows: sexual intercourse, including genital to genital, oral to genital, and anal to genital, or oral and anal to anal, whether between persons of the same or opposite sex; masturbation; sadistic or masochistic abuse; or lascivious exhibition of the genitals or pubic area of any person.

Here, and throughout all of my instructions, the term ' a visual depiction' includes any photograph, film, video, picture, or image, including undeveloped film and videotape, and data stored on a computer disk or by electronic means that is capable of conversion into a visual image, whether or not stored in a permanent format." Trial Tr., dated Oct. 3, 2023, at 868:4-869:3 (emphasis added).

The Court further instructed the jury as follows:

"In deciding whether the government has proved that the defendant acted for the purpose of producing a visual depiction of the sexually explicit conduct or for the purpose of transmitting a live visual depiction of such conduct, you may consider all of the evidence concerning the defendant's conduct. While the government must prove that the defendant acted with the purpose of producing a visual depiction of the child engaging in sexual explicit conduct or transmitting a live visual depiction of such conduct, it is not required that the government prove that the visual depiction of that conduct was actually produced or transmitted." *Id*. at 869:4-14.

16

124 (2d Cir. 2010). The Government did that. *See id.*; *United States v. Heinrich*, 2021 WL 630962, at *3 (W.D. Pa. Feb. 18, 2021) ("[T]he government was required to prove that production of a visual depiction was a purpose of engaging in the sexually explicit conduct. . . . Nonetheless, courts do not require that a defendant be single-minded in his purpose to support a conviction under § 2251(a)."); *United States v. Torres*, 894 F.3d 305, 313 (D.D.C. 2018) (finding that the jury had evidence of "specific purpose" because, among other things, the defendant could "be seen holding [the victim's] penis toward the camera to better display it"). "'Sexually explicit conduct' means actual or simulated sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; bestiality; masturbation; sadistic or masochistic abuse; or lascivious exhibition of the genitals or pubic area of any person . . . ." Sand, Modern Federal Jury Instructions, Instr. 62-7.

"The terms 'employ', 'persuade', 'use,' 'induce,' 'entice,' and 'coerce' have their common and ordinary meanings." Trial Tr., dated Oct. 3, 2023, at 868:13-14; *see also* Sand, Modern Federal Jury Instructions, Instr. 62-5; *Smith v. United States*, 508 U.S. 223, 228 (1993) ("When a word is not defined by statute, we normally construe it in accord with its ordinary or natural meaning."). A separate instruction of "specific intent" is unnecessary (superfluous) and, therefore, not contained in the Modern Federal Jury Instructions. For similar reasons, a separate definition of "producing" or "purpose of producing" was not required to be included in the jury instructions. *See United States v. Smith*, 459 F.3d 1276, 1298 (11th Cir. 2006) ("**We do not believe that 'producing' is so unduly technical or ambiguous as plainly to require a specific instruction**.") (emphasis added). "[A] district court enjoys broad discretion in

crafting its instructions, which is only circumscribed by the requirement that the charge be fair to both sides." *U.S. v. Ghailani*, 733 F.3d 29, 53 (2d Cir. 2013).

The jury found beyond a reasonable doubt that the Defendant "used, employed, persuaded, induced, enticed or coerced" Kaili to take part in sexually explicit conduct with the intent in part to produce visual depictions in video form. See discussion of Defendant's conduct on pages 2 to 4 above; *see also United States v. Ruggiero*, 791 F. 3d 1281, 1291 (11th Cir. 2015) ("We have no doubt that a person of ordinary intelligence would know, upon reading § 2251(a), that it prohibits persuading a 15 year old to engage in sexually explicit conduct for the purpose of photographing her with a cell phone that has traveled in foreign commerce."); *United States v. Raplinger*, 555 F.3d 687, 693 (8th Cir. 2009) (jury instruction that a minor may not legally consent to being sexually exploited "correctly stated the law").

"A court may enter a judgment of acquittal only if the evidence that the defendant committed the crime alleged is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." *United States v. Espaillet*, 380 F. 3d 713, 718 (2d Cir. 2004) (internal quotations and citation omitted). The evidence of guilt of the Defendant in this case is overwhelming. *See* Gov't Opp. at 14; *United States v. Sirois*, 87 F.3d 34, 43 (2d Cir. 1996) ("[A] defendant can be found to have 'used' a minor to produce child pornography if the minor serves as the subject of the illicit photographs taken by the defendant."); *see also* Sand, Modern Federal Jury Instructions, Instr. 62-5.

### **Palomino-Coronado Case Is Readily Distinguishable (by Many Courts)**

The defense relies unpersuasively upon a 2015 Fourth Circuit decision entitled *Palomino-Coronado*, 805 F.3d 127 (4th Cir. 2015), in a belated effort to challenge the *Rosado*

case jury instructions. In *Palomino-Coronado*, the Circuit Court reversed the defendant's conviction of sexual exploitation of a child (production of child pornography) in violation of 18 U.S.C. § 2251(a) because "only one [still] photograph was taken" and allegedly because "[n]o direct evidence or statements indicated intent were offered." The *Palomino-Coronado* Court concluded that the Government "failed to prove . . . that production of a visual depiction was a purpose of engaging in sexually explicit conduct." *United States v. Palomino-Coronado*, 805 F.3d 127, 130 (4th Cir. 2015). The Court stated that there "was no testimony that [the defendant] gave any instruction or direction to [the victim] as part of their sexual encounter that would indicate [child pornography] purpose." *Id.* at 132. As noted, *Palomino-Coronado* is readily and widely distinguished. *See, e.g.*, *United States v. Kokayi*, 2021 WL 3733010, at *13 (4th Cir. Aug. 24, 2021); *U.S. v. Sirois*, 87 F.3d 34, 41 (2d Cir. 1996); *United States v. Fifer*, 188 F. Supp. 3d 810, 820 (C.D. Ill. 2016); *United States v. Jackson*, 2024 WL 2874364, at *5 (3d Cir. June 7, 2024).

The *Rosado* case differs dramatically from *Palomino-Coronado* in at least two ways, as follows: (i) the jury instructions were **not** challenged in *Palomino-Coronado* as they are in *Rosado* (albeit too late), and (ii) the evidence at trial was arguably weak in *Palomino-Coronado* (i.e., involving one still photo), while the evidence of Defendant Rosado's guilt was, as the Government points out and the Court agrees, "overwhelming." Gov't Opp. at 14; *see* GX 224-10; GX 224-11.[12]

---

[12] At the risk of some repetition, *Palomino-Coronado* has been distinguished in subsequent Fourth Circuit cases and in other circuits. *See, e.g.*, *United States v. Kokayi*, 2021 WL 3733010, at *13 (4th Cir. Aug. 24, 2021); *U.S. v. Sirois*, 87 F.3d 34, 41 (2d Cir. 1996) ("[W]e believe that the

By contrast, in the *Rosado* trial, there was overwhelming testimony and other evidence that Defendant Rosado used, instructed, coerced, conducted, arranged, directed, and produced the two sex videos—one involving intercourse and the other video depicting oral sex—with Rosado's victim, Kaili. *See* Trial Tr., dated Sept. 27, 2023, at 216:5-9; GX 224-10; GX 224-11. Defendant Rosado's intent and purpose were obvious. **"The meaning of ['the purpose'] lies within the common understanding of jurors and needs no further elaboration."** *United States v. Meshack*, 225 F.3d 556, 571 (5th Cir. 2000) (emphasis added). Similarly, "the meaning of "use" in § 2251(a) is within the typical juror's everyday understanding of the word." *United States v. Sirois*, 87 F.3d 34, 41 (2d Cir. 1996). Rosado specifically "asked" Kaili in advance to make sexploitation videos. Trial Tr., dated Sept. 27, 2023, at 224:21. Rosado directed the sex video performances, including by shaking and slapping Kaili's buttocks so she was more visible to the camera. *See* Gov't Opp. at 15; GX 224-10. Rosado adjusted and improved the lighting while the videos were being recorded. *See* Gov't Opp. at 2; GX 224-10. Rosado instructed Kaili to take her clothes off and he told Kaili that the camera needed to "see" her. GX 224-11; *see* Gov't Opp. at 2. Rosado positioned the camera at different angles to capture various poses of Kaili while filming. *See* Gov't Opp. at 2, 14-15; GX 224-11. In one video, "Rosado [is depicted] repositioning Kaili's body to center it on the camera and then opening her legs so that Kaili's vagina was clearly visible to the camera." Gov't Opp. at 15.

Many persuasive decisions involving child pornography have distinguished *Palomino-Coronado*. In fact, the Fourth Circuit in *Kokayi*—decided six years after *Palomino-Coronado*

---

meaning of 'use' in § 2251(a) is within the typical juror's everyday understanding of the word. Accordingly, the district judge did not err in declining to define it further.").

was decided—limited the *Palomino-Coronado* holding by stating that "the single deleted photo, standing alone, was not evidence that [the defendant] engaged in sexual activity with [a minor] *to* take a picture." *United States v. Kokayi*, 2021 WL 3733010, at *13 (4th Cir. Aug. 24, 2021); *United States v. Fifer*, 188 F. Supp. 3d 810, 820 (C.D. Ill. 2016) (distinguishing *Palomino-Coronado* and finding that "the Government . . . proved intent" because, among other things, the defendant in *Fifer* was "seen changing the angle and position of the recording device." Such activity was "probative of the [d]efendant's intent."); *United States v. Torres*, 894 F.3d 305, 313 (D.D.C. 2018) (distinguishing *Palomino-Coronado* and finding that the jury had "evidence of specific purpose" because, among other things, the defendant could "be seen holding [the victim's] penis toward the camera to better display it"). In *United States v. Jackson*, 2024 WL 2874364, at *5 (3d Cir. June 7, 2024), the Court distinguished *Palomino-Coronado* and found that "a jury had reason to infer that [defendant] had sex partly to record it" and that "[t]he angle of the camera, which focused on [the victim's] genitals, and the fact that [defendant] watched it with [the victim] afterwards show that he had a particular purpose in recording their sexual activities." In *Mynes*, the Fourth Circuit instructed that there was sufficient evidence to prove intent where a defendant "intentionally took photographs of [a victim's] exposed genitalia, focused and closed-in on that part of her body for later images, and retained them on his phone." *United States v. Mynes*, 2024 WL 277707, at *4 (4th Cir. Jan. 25, 2024).

Similarly, in *United States v. Grinder*, 2024 WL 96277, at *3 (D. Md. Jan. 9, 2024), the Court stated: "Unlike in *Palomino-Coronado*, where only one sexually explicit photograph was taken and subsequently deleted, [defendant's] conduct involved multiple images taken

over the course of his abuse of [the victim] found on his cell phone and laptop computer." In *United States v. Jackson*, 2024 WL 2874364, at *5 n.12 (3d Cir. June 7, 2024), the Court found that **the defendant's "reliance on *Palomino-Coronado* is misplaced."** *Id.* (emphasis added). "[T]he media at issue there was a single sexually explicit photo, where here, the media was a video, and the camera position strongly suggests an intent to create child pornography." *Id.* In *U.S. v. Sirois*, the Second Circuit reviewed a decision from the District of Connecticut and concluded that the jury had "sufficient circumstantial evidence" to reject the defense argument that the photography was "a spur-of-the-moment" idea where the defendant "brought a camera," took photographs with the camera of sexual activity with underage boys, and the "photographs were later found" in the defendant's possession. *United States v. Sirois*, 87 F.3d 34, 42 (2d Cir. 1996).

Clearly, *United States v. Palomino-Coronado* is not at all supportive of Defendant Rosado's Rule 33 Motion. *Palomino-Coronado* focuses on the insufficiency of the evidence and not upon the content of jury instructions. *See* Gov't Opp. at 13. More importantly, *Palomino-Coronado* "does not stand for the proposition that a [c]ourt needs to include the words 'specific intent' or define 'producing' or 'purpose of producing' when instructing the jury on the elements of the crime of sexual exploitation of a minor." *Id.* Rather, "a defendant can be found to have 'used' a minor to produce child pornography if the minor serves as the subject of the illicit [videos] taken by the defendant." *Sirois*, 87 F.3d at 43.

### Abusive Relationships

Kaili testified at trial about her abusive relationship with the Defendant, starting when she was 16 years old and Defendant was 34 years old. *See, e.g.*, Trial Tr., dated Sept. 27, 2023,

at 145:1-4 (AUSA: "How old were you when you were in that relationship?"  Kaili: "16."

AUSA: "How old was Angel?"  Kaili: "34."); at 155:4-6 (AUSA: "When you and Angel

started having sex, Kaili, how old were you?"  Kaili: "16."); at 161:13-19 (AUSA: "Kaili,

ultimately, after Angel found out you were 16 years old, did he end the relationship for good?"

Kaili: "No."  AUSA: "After this happened, when he found out you were 16 years old, did you

continue to live with Angel or did you live with somebody else?"  Kaili: "I continued to live

with Angel.").

During the relationship between Kaili and Angel, the Defendant was aggressive and

sometimes physically violent. *See id.* at 162:16-19, 173:17, 175:19-25, 184:18-25. Angel

threatened to harm Kaili and her family members.  *See id.* at 162:16-19 (Kaili: "I started to

notice red flags in Angel with his aggression, and it was always his way or no way."); at

162:25-163:1-4 (Kaili: "I started to notice that he would get more aggressive with me with his

tone or he would get a little bit violent in my face, threaten to hit me, choke me, stuff like that.

I'd be [] against the wall, and I felt like I couldn't do nothing about it."); at 163:17-20 (Kaili:

"He [the Defendant] would pull me by my hair sometimes, grab my face really aggressively

or shove me in certain ways.  He would choke me really hard, stuff like that.  Push me against

the wall, choke me."); at 169:17-18 (Kaili: "He [the Defendant] always used my family as

leverage over me."); at 173:17 (Kaili: "He [the Defendant] smacked me and he burnt me with

a cigarette."); at 175:19-25 (Kaili: [The Defendant would say] "That he knows where my

daughter [Winter, aged 1] lives and that he was going to go and hurt my daughter.  That he

will find where my mom lives or where she works, and he would do stuff to my mom to hurt

me.  That if I don't do certain things, I don't know, we would - - we always got into little

23

arguments.  He used to always tell me it was his way or no way, and if I didn't do it his way, it was always a problem."); at 184:18-25 (Kaili: "I remember I felt his leg or his knee on me, and I was trying to get him off of me, choking me pretty hard, because he was upset because I had lied and he seen that I texted my mom.  And he had asked me if I had sent her a text, and I said no, I was going to, but I didn't.  And he was just cursing at me, degrading me really bad. He was just telling me that if he wanted to, he could spit on me, piss on me."); at 195:1-7 (Kaili: [The Defendant would say] "That he was going to come find me and light my family's house up.  He was going to come in there, beat the shit out of me.  He was going to violate me and show me what type of grown man he is . . . Or he would threaten with me with my daughter and say, I know how to find out.  I'll just stick next to Winter, stuff like that."); at 206:12-15 (Kaili: "Pull me by my hair, spit in my face, smack me, choke me really bad knowing I was pregnant.  Threw a phone at my face while I was pregnant.  Just abusing me any possible way he could to try to intimidate me to cooperate."); at 217:21-23 (Kaili: "He [the Defendant] had my phone in his hand and he, like, punched me, he jabbed me in my mouth, and I started crying and I ran to the bathroom"); at 218:8-10 (Kaili: "He [the Defendant] was hitting me [with a belt].  We was arguing really bad.  And then I'm crying.  And then he started crying and apologizing.  At that point I just wanted to leave.").[13]

The Government's expert witness, Dr. Chitra Raghavan, described some of the typical aspects of  abusive relationships.  She defined "domestic violence" as "a broad term that we

---

[13] Recorded audio messages that the Defendant sent to Kaili threatening to harm her were introduced into evidence at trial.  *See, e.g.*, Trial Tr., dated Sept. 27, 2023, at 202, 204; GX 205B, 205V.

use to describe a relationship in which one partner uses some form of violence - - physical, sexual, or psychological - - in order to control the other partner." Trial Tr., dated Oct. 2, 2023, at 556:18-21. Dr. Raghavan explained that "domestic violence" is also referred to as intimate partner violence and "encompasses many different types of cruelty, exploitation, and abuse, some of which are physical, so actual hitting; some of which are emotional, which can get very tricky; and some of which is sexual. And we sometimes use the term coercive control to understand the kinds of abuse that might happen in a domestic violence relationship." *Id*. at 557:8-13. Dr. Raghavan testified that: "In coercive control, the controlling abuser tries to infiltrate the private and public life, the mind of the person, the thoughts of the person, in the sexual domain, and so there is almost no area in which control is not exerted." *Id*. at 561:10-13. Dr. Raghavan also testified that "children are frequently used as pawns in order to get the woman to capitulate or to give in." *Id*. at 569:19-21. She explained that "[i]f intimidation with the woman doesn't get the quickly desired results, the easiest way is to then threaten the people that she feels responsible for, whether or not she's close to them, and that is, threatening parents, threatening children, threatening neighbors, cousins, friends, and saying . . . if you lean on anybody else for support, if you go to anybody else, I'm going to harm those people. So it's a really effective way of shutting down a victim's world and isolating them." *Id*. at 569:25-571:8.

### IV. Conclusion and Order

For the reasons set forth in this Decision and Order, Defendant's Rule 33 Motion, dated June 5, 2024, is denied. Sentencing will take place on November 19, 2024.

Date: September 10, 2024
New York, New York

_____
**RICHARD M. BERMAN, U.S.D.J.**